IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SZ DJI TECHNOLOGY CO., LTD., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF DEFENSE, *et al.,*<br><br>Defendants. | No. 1:24-cv-02970-PLF |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO
COMPEL DEFENDANTS TO PROVIDE ACCESS TO
"CLASSIFIED" INFORMATION TO PLAINTIFFS' COUNSEL**

Plaintiffs, SZ DJI Technology Co., Ltd. ("SZ DJI") and Shenzhen DJI Baiwang Technology Co., Ltd. ("Baiwang") (collectively, "DJI"), respectfully submit this reply in support of their motion to compel Defendants to provide DJI's cleared counsel with access to classified information underlying the designation of DJI as a Chinese Military Company ("CMC") under Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act ("NDAA") for Fiscal Year 2021. Pub. L. No. 116-283, 134 Stat. 3388, 3965–3966 (Jan. 1, 2021), as amended Pub. L. No. 118-159, Div. A, Title XIII, sec. 1346, 138 Stat. 1773, 2123–2126 (Dec. 23, 2024) [hereinafter, "Section 1260H"].

Defendants' opposition rests on three generalized assertions: (1) Section 1260H authorizes submission of classified information *ex parte* and *in camera*, and courts have on occasion accepted that approach; (2) the Executive Branch has exclusive authority to determine the "need-to-know" classified information; and (3) disclosure of "classified" information to private counsel poses a national security risk. These broad assertions about statutory permissibility and the general classification framework fail entirely to address the specific due process interests presently before

1

this Court, and Defendants nowhere explain how or why these generalized interests override DJI's due process rights, which are compromised by the denial of access to classified information essential for DJI to meaningfully challenge its designation. Defendants' arguments therefore do not justify the continued withholding of information essential to DJI's ability to defend its interests.

I. **Section 1260H Does Not Mandate the Withholding of Classified Information**

Section 1260H, as amended in December 2024, states that "if the determination [of CMC designation] was based on classified information . . . such information ***may be*** submitted to the reviewing court *ex parte* and *in camera*." Section 1260H(f) (emphasis added). Defendants suggest that this permissive language favors *ex parte* and *in camera* submission, *see* Opp. at 3; however, notably, the statute does not mandate this procedure or otherwise eliminate the Court's discretion to order disclosure when due process requires it.

In fact, this Court has consistently held that it has the discretion to order disclosure of classified information in a civil case. *See, e.g., Al Bakri v. Obama*, 660 F. Supp. 2d 1, 1–2 (D.D.C. 2009) (affirming district courts' "role in ordering the disclosure of classified information to counsel with an adequate security clearance"); *Al Odah v. United States*, 559 F.3d 539, 544, 547 (D.C. Cir. 2009) ("[B]efore the district court may compel the disclosure of classified information, it must determine that the information is both relevant and material . . . [B]efore ordering disclosure of classified material to counsel, the court must determine that alternatives to disclosure would not effectively substitute for unredacted access."); *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 99–100 (D.D.C. 2012) ("In the Court's view, while the Court has the authority to permit or direct the disclosure of classified information in a civil case, it should only do so where the information is material to the resolution of disputed legal issues and where alternatives to reliance upon classified information are inadequate to satisfy the interests of justice."); *see also Webster v. Doe*, 486 U.S.

592, 604 (1988) ("[T]he District Court has the latitude to control any discovery process . . . so as to balance respondent's need for access to proof which would support a colorable constitutional claim against the extraordinary needs of the CIA for confidentiality and the protection of its methods, sources, and mission.").

The authorities relied upon by the Defendants are not to the contrary. Defendants cite to a string of cases in support of the proposition that courts routinely accept *ex parte* and *in camera* classified information as part of the administrative record. Opp. at 4. "In each of these cases," the Government states, "the D.C. Circuit considered the classified portions of the administrative record *in camera* and *ex parte*, without providing opposing counsel access to the information or requiring the government to provide unclassified summaries of classified information." Opp. at 5. However, the Government misstates the key elements of many of these cases, none of which relates to CMC designations or addresses a motion to compel of the sort at issue here.

In addition, in cases in which the Government withholds "classified" information, the Government often provides a summary of the information being withheld on the basis of its classified status. *See, e.g., Bello v. Gacki*, 94 F.4th 1067, 1076 (D.C. Cir. 2024) ("We conclude that OFAC gave sufficient notice via the redacted administrative record, ***unclassified summary***, Blocking Memorandum, Federal Register notice and press release . . . OFAC went further and provided an unclassified summary of the administrative record's privileged information.") (emphasis added); *Fares v. Smith*, 901 F.3d 315, 320–21 (D.C. Cir. 2018) ("The day after plaintiffs filed suit, on August 26, 2016, OFAC furnished an ***unclassified summary of the underlying evidence that the agency had redacted from the administrative record*** . . . It was terse, only two paragraphs. ***Two months later, on October 28, the agency produced a more substantial summary spanning several pages*** . . . The summaries together identify several specific allegations

3

motivating the plaintiffs' designation.") (emphasis added); *Olivares v. TSA,* 819 F.3d 454, 464 (D.C. Cir. 2016) (post-hoc accounts through a declaration that "show[ ] that the previously undisclosed internal materials in fact do state the contemporaneous explanation for TSA's denial of Petitioner's application" can overcome the presumption of remand when an agency's statement of reasons is insufficient). Here, the Government has offered no explanation for its redactions, nor has it provided any indication of the scope or substance of the information being withheld. Rather, DJI is left to speculate about the apparently key information the Government relied upon in its designation and is unable to correct any factual errors, outdated information, or flawed reasoning in the sealed portion of the administrative record.

Rather than justify the redactions, the Government attempts to downplay the significance of the classified material, asserting that there is only "a very small amount of classified information." Opp. at 1, 2. However, because the redacted information directly supports the Government's designation decision—and may very likely contain errors and inaccuracies— disclosure is necessary. *See* Mot. at 5–7.

**II.    DJI's Cleared Counsel Possesses a Need-To-Know the Redacted "Classified" Information**

Defendants argue, citing Executive Order No. 13,526, that classified information can only be accessed if three conditions are met: "(1) a favorable determination of eligibility for access has been made by an agency head or the agency head's designee; (2) the person has signed an approved nondisclosure agreement; and (3) the person has a need to know the information." Opp. at 6 (citing Exec. Order No. 13,526 § 4.1(a)). Defendants do not dispute that (1) and (2) are not at issue[1], Opp.

---

[1] In advance of filing his declaration, Mr. Nitze was informed, in writing, by a Supervisory Security Specialist and Classified Information Security Officer at the Department of Justice that he has an active top secret security clearance that would require renewal if Mr. Nitze were deemed to have a need to see classified materials in this matter.  As an attorney in private practice, Mr. Nitze has,

4

6, but instead asserts that the "need-to-know" determination should exclusively be made by "the agency that originates the information at issue." Opp. 6–7.

Defendants' assertion is incorrect. It is beyond question that this Court has the authority to independently determine whether private counsel has a "need-to-know" classified information, a straightforward factual inquiry grounded in relevance and materiality. For instance, in *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999), the D.C. Circuit held that the plaintiff, a member of the White House Commission on Aviation Safety and Security who had been improperly restricted from accessing classified documents, was entitled to review all classified materials available to the Commission. *Id.* at 292. Moreover, Judge Rogers' concurrence explicitly recognized the judiciary's authority to assess the "need-to-know" requirement: "[t]o the extent the government maintains there is still a 'need-to-know' threshold requirement before classified information can be disclosed, the court's holding . . . appears to satisfy the need-to-know requirement, although ***the issue could be explored as necessary by the district court on remand***." *Id.* at 293–94 (emphasis added).

Further guidance arises from the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3 §§ 1–16. While CIPA governs criminal matters involving classified information, courts have recognized its relevance to civil contexts. *See In re Sealed Case*, 494 F.3d 139, 154 (D.C. Cir. 2007) (noting in a civil case that "nothing in this opinion forecloses a determination by the district court that some of the protective measures in [the Classified Information Procedures Act ('CIPA')], 18 U.S.C. app. III, which applies in criminal cases, would be appropriate, as [plaintiff] urges, so that his [civil] case could proceed"). The applicable standard for determining

---

in other contexts, been permitted access to classified information, upon execution of a nondisclosure agreement, during the pendency of a clearance re-investigation, including as recently as 2023.

an individual's eligibility for access to classified information is no different in a criminal matter than it is for a civil case. There must be a determination of eligibility, a demonstrated "need-to-know", and the execution of an approved non-disclosure agreement. *See* Executive Order 13,526 § 4.1(a). Under CIPA, courts regularly assess precisely the type of "need-to-know" determinations—"all determinations concerning the use, relevance, or admissibility of classified information." *See* 18 U.S.C. App. 3 § 6.

In addition, in *Stillman v. DoD et al.*, 209 F. Supp. 2d 185 (D.D.C. 2002), this Court reasoned that constitutional rights may require providing cleared counsel with access to classified documents, stating it would "not allow the government to cloak its violations of plaintiff's First Amendment rights in a blanket of national security." *Id.* at 231. Although reversed procedurally by the D.C. Circuit, which criticized the scope of the district court's review rather than the substance of the Court's determination, the D.C. Circuit notably left undisturbed the fundamental principle that courts can independently evaluate whether cleared counsel may access classified materials when constitutional rights are at stake. *See Stillman v. CIA*, 319 F.3d 546, 548–49 (D.C. Cir. 2003).

Here, a similarly compelling constitutional issue—the deprivation of DJI's due process rights—necessitates counsel's access to the redacted classified information. Without access, DJI cannot effectively challenge its designation as a CMC nor correct the potential factual inaccuracies and/or flawed reasoning in the redacted administrative record.

## III. Disclosure of "Classified" Information to Private Counsel Does Not Pose a National Security Risk

The Government wrongly contends that it is "settled law" that disclosure of classified information to private counsel inherently harms national security—even if counsel holds an appropriate security clearance. Opp. at 7–8. Contrary to the Government's overly broad assertion,

courts consistently recognize that private counsel who possess valid security clearances can responsibly access classified information without compromising national security. *See Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 982–83 (9th Cir. 2012) ("To the extent that an unclassified summary could provide helpful information, such as the subject matter of the agency's concerns, and to the extent that it is feasible to permit a lawyer with security clearance to view the classified information, ***the value of those methods seems undeniable***.") (emphasis added); s*ee also Twitter, Inc. v. Garland*, 61 F.4th 686, 695 (9th Cir. 2023) ("[T]he district court also directed the government to proceed with granting two of Twitter's outside lawyers . . . security clearances that would permit review of relevant classified materials in this matter.") (subsequent history and citations omitted).

Moreover, the cases cited by the Government do not support its sweeping claim. Those cases either involve distinct contexts, such as criminal proceedings under CIPA, which expressly limits defendants' access to classified material, *see United States v. Trump*, 701 F. Supp. 3d 1, 3–4 (D.D.C. 2023); counsel lacking sufficient clearance, *see United States v. El-Mezain*, 664 F.3d 467, 568 (5th Cir. 2011); or cases that did not even address whether cleared counsel could access classified materials, *see Sulemane v. Mnuchin*, No. 16-cv-1822, 2019 WL 77428, at *3, 6–7 (D.D.C. Jan. 2, 2019). Even *Twitter,* the Government's seemingly most instructive citation, underscores a "case-by-case approach," refuting any blanket prohibition of disclosure to cleared counsel at the risk of national security. *Twitter,* 61 F.4th at 710. There is no "settled law" barring disclosure to cleared private counsel based solely on generalized national security concerns, notwithstanding the Government's suggestion to the contrary.

Nor has the Government articulated any case-specific reason for why disclosure here would harm national security. It points to no facts suggesting DJI poses any risk, nor does it explain how

7

allowing DJI's cleared counsel—bound by nondisclosure obligations—to view the materials could result in harm. The only fact that the Government relies on to support the notion that disclosure will present a national security risk highlights just the sort of inconsistency in the administrative record that Plaintiffs hope to remedy. The Government argues that disclosure to DJI poses a security risk because it is "headquartered in Shenzhen, China"; the administrative record, however, inaccurately states that the new DJI headquarters is in the Xi'an Economic and Technological Development Zone, which is a different city more than 1,000 miles away from Shenzhen. *Compare* Opp. at 9 ("private counsel represents a company headquartered in Shenzhen, China"), *with* AR at 32 ("In 2019, DJI announced plans to build its Innovation Center and Global Technical Support Center in the Xi'an Economic and Technological Development Zone within five years. The new DJI headquarters, called the DJI Sky City Innovation Hub, has been open since September 2022."). This is one of the many inconsistencies and errors that Plaintiffs have identified in the administrative record.

Moreover, the fact that DJI is headquartered in China does not, by itself, create any national security risk justifying withholding access from DJI's U.S.-based, security-cleared counsel. Plaintiffs are not seeking to disclose classified information to DJI or any foreign entity, but solely to permit counsel—who holds the necessary clearance—to review that information, upon clearance renewal, under strict safeguards. As Counsel Samuel Nitze affirmed in his Declaration, Mr. Nitze "would expect to sign a Classified Information Nondisclosure Agreement . . . pursuant to which [he] would be barred from disclosing information to [his] clients" or others involved in the case "who do not hold an appropriate security clearance." *See* ECF No. 29-1 ("Nitze Declaration") ¶ 4. This commitment eliminates any legitimate concern that the information could be exposed to unauthorized parties, including the Chinese government.

This case involves a designation that threatens the core of DJI's business operations and reputation. In such a high-stakes context, the accuracy and completeness of the administrative record are paramount. Plaintiffs have already identified numerous factual errors in the unclassified portion of the record, which raises serious concerns about allowing the classified portions the Government has withheld to completely avoid similar scrutiny. These known flaws strongly support the need for DJI's cleared counsel to examine the full record, including the redacted materials, to ensure the agency's decision was based on accurate, complete, and fair information.

DJI's ability to defend itself requires access to the evidence underlying its designation. Without it, DJI is left to guess at the Government's rationale and unable to challenge potentially flawed assumptions, outdated intelligence, or unsupported conclusions that underlie the decision. The Government's blanket withholding—based solely on DJI's national origin and without any case-specific justification or effort to mitigate the resulting unfairness—violates core due process principles, especially in light of counsel's commitment that DJI itself will never have access to this information. *See Al Haramain Islamic Found., Inc.*, 686 F.3d at 984–89 (finding that Treasury had violated due process by, among other harms, "refus[ing] to disclose its reasons for investigating and designating [the petitioner], leaving [the petitioner] unable to respond adequately to the agency's unknown suspicions"); *see also Twitter,* 61 F.4th at 710 ("[T]he government may withhold classified information that truly implicates national security as long as it undertakes reasonable measures to mitigate the potential unfairness to the plaintiff.") (citations omitted). Here, the Government has not undertaken any reasonable measures to mitigate the unfairness caused by withholding information: it has provided neither unclassified summaries, nor any indication of the substance, scope, or significance of the withheld material—depriving DJI of any meaningful

opportunity to contest the designation, which is flatly inconsistent with the protection of Plaintiffs' due process rights.

## IV.     Defendants Mischaracterize Plaintiffs' Authorities

Defendants' assertion that Plaintiffs "fail to cite any authority" supporting disclosure of classified material to cleared counsel mischaracterizes both Plaintiffs' position and the relevant case law. Opp. at 9–15. DJI has never claimed that this case is identical to the habeas context. But the standard articulated in that context—particularly by this Court in *Al Bakri*, is broadly worded and not confined to any one procedural setting:

> The D.C. Circuit has recently issued an opinion that specifically addresses a district court's role in ordering the disclosure of classified information to counsel with an adequate security clearance. . . . A district court must determine that the information is both relevant and material before compelling the disclosure of classified information. Moreover, counsel's access to classified information must be necessary to facilitate meaningful review, and the court must determine whether alternatives to access would suffice.

660 F. Supp. 2d at 1–2 (quotations and citations omitted).

Defendants' attempt to dismiss *Greene v. McElroy*, 360 U.S. 474 (1959) as irrelevant because it arose in the employment context likewise misses the point. Opp. at 13. *Greene* stands for the broader constitutional principle that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Id.* at 496. That principle applies with full force here, where DJI faces a designation that threatens its core operations based on evidence it cannot access, assess, or rebut.

Finally, the Government's casual dismissal of Justice Gorsuch's concurrence in *TikTok Inc. v. Garland*, 145 S. Ct. 57 (2024), is misplaced. Opp. at 14. While it is true that the concurrence is

10

not binding, it expresses a serious constitutional concern directly implicated here: that Congress cannot eliminate due process protections by authorizing *ex parte* and *in camera* submissions that wholly exclude cleared adversarial counsel. That concern is all the more pressing given that the Court in *TikTok* explicitly declined to rely on the classified record at all. *See id.* at 69 n.3. Justice Gorsuch's opinion—though offered in a concurrence—addresses the precise due process issues raised here and lends further weight to the constitutional flaws in the Government's approach. Defendants' effort to dismiss it out of hand only underscores the weakness of their position.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order compelling Defendants to provide DJI's security-cleared counsel with access to the "classified" materials underlying DJI's designation as a CMC.

| | |
|---|---|
| Dated: March 21, 2025 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

/s/  *Samuel G. Williamson*
Samuel G. Williamson (D.C. Bar No. 984748)
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133
samwilliamson@quinnemanuel.com
Tel.: (305) 402-4880
Fax: (305) 901-2975

Derek L. Shaffer (D.C. Bar No. 478775)
1300 I Street, Suite 900
Washington, DC 20005
derekshaffer@quinnemanuel.com
Tel.: (202) 538-8000
Fax: (202) 538-8100

Samuel P. Nitze
295 5th Avenue, 9th Floor
New York, New York 10016
Tel.: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 21, 2025, a true and correct copy of the foregoing was electronically filed and served via this Court's CM/ECF system upon any parties or counsel of record registered with the CM/ECF system.

                                           /s/  *Samuel G. Williamson*
                                           Samuel G. Williamson (Bar No. 984748)
                                           samwilliamson@quinnemanuel.com